UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESUS GONZALEZ (A-095-739-118),

Petitioner,

v.

WARDEN, CALIFORNIA CITY
DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-2804 DC CSK

FINDINGS AND RECOMMENDATIONS

Petitioner Jesus Gonzalez (A-095-739-118), a native and citizen of Mexico who entered the United States without inspection in 1992, filed a verified pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On February 24, 2026, petitioner was taken into custody and detained by U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") officers.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends the petition for a writ of habeas corpus be granted and ordering petitioner's immediate release.

///

///

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

I.    **FACTUAL BACKGROUND**[2]

Petitioner, a native and citizen of Mexico, entered the United States without inspection and has lived in the United States since 1992.  (See ECF No. 1 at 2; ECF No. 7-1 at 2 (Form I-213).)  Petitioner was seven years old when he came to the United States with his father.[3]  (Id. at 3.)  Petitioner, now 40, is married and his wife and three children are all American citizens.  (Id. at 2, 3.)

In August 2007, petitioner was convicted of a firearm charge.  (See ECF No. 7-1 at 3; ECF No. 7-2 at 2.)  Petitioner was issued a Notice to Appear on August 29, 2007.  (Id.)  Petitioner was detained and released by immigration officials in 2007.[4]  (See ECF No. 13 at 3; see also ECF No. 7 at 3.)

On April 19, 2013, petitioner filed an application to register permanent residence or adjust status (Form I-485), which was administratively closed on July 9, 2024.  (ECF No. 7-1 at 3.)  On September 17, 2013, an immigration judge granted petitioner voluntary departure, which petitioner appealed.  (Id.)  The Board of Immigration Appeals administratively closed the case on May 7, 2015.  (Id.)  On September 19, 2022, petitioner filed for application for employment authorization, which was rejected on September 21, 2022.  (Id.)  On April 6, 2023, petitioner filed another application for employment authorization, which was approved on October 3, 2024, and

---

[2] Petitioner filed a verified habeas petition.  (ECF No. 1 at 21.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents appear to contest petitioner's factual allegations.  (See ECF Nos. 7, 7-1, 7-2.)

[3] The petition states that petitioner's father is a United States citizen.  (ECF No. 1 at 3.)  Respondents have submitted records that indicate petitioner's father is a Mexican citizen.  (ECF No. 7-1 at 1.)  The Court need not resolve this factual dispute.

[4] Respondents submitted a rap sheet for petitioner with law enforcement encounters beginning in 2000, which include assault and battery, weapons, gang-related, DUIs, and drug-related offenses, through his most recent arrest in February 2026 for controlled substances charges.  (See ECF No. 7-2)  An unsigned filing was submitted to the court that includes handwritten notations on an excerpt of what appears to be an immigration court filing and handwritten notations on petitioner's rap sheet that appear to explain or dispute some of the entries.  (See ECF No. 10.)  Because respondents do not assert that petitioner is detained on the basis of § 1226(c) for criminal conduct, the Court cannot consider unsigned filings, and petitioner's counsel does not explain or refer to this filing (see ECF No. 13), the Court declines to consider this filing.

2

valid through October 2, 2029.  (Id. at 2-3)

On February 19, 2026, petitioner was arrested by the Siskiyou Sheriff's Office for transporting a controlled substance, possessing a controlled substance for sale, and possessing unlawful paraphernalia.[5]  (ECF No. 7-1 at 2 (Form I-213); ECF No. 7-2 at 9.)  On February 20, 2026, ERO became aware of petitioner's arrest, and petitioner was taken into ICE custody on February 26, 2026.  (Id.)  Petitioner contends that he would have been released on bond in the criminal case had detention and deportation officers not taken petitioner into immigration custody.  (See ECF No. 13 at 3-4 (citing ECF No. 7-1 at 2).)  Petitioner has been continuously detained since February 26, 2026.  (ECF No. 1 at 2.)

## II.    PROCEDURAL BACKGROUND

On April 13, 2026, petitioner filed his petition for writ of habeas corpus and motion for appointment of counsel.  (ECF Nos. 1, 3.)  On April 27, 2026, respondents filed a timely opposition.  (ECF No. 7.)  On May 21, 2026, this Court appointed counsel for petitioner.  (ECF No. 12.)  On May 27, 2026, petitioner, through counsel, filed a supplemental reply.[6]  (ECF No. 13.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."

---

[5]  In their opposition to the petition, respondents do not mention petitioner's prior criminal history.  (ECF No. 7, passim.)  On August 8, 2007, petitioner was convicted of violating California Penal Code § 12031(A)(2)(C) "GANG MEMBER:CLF/ARM:PUB/ETC," and sentenced to 60 days in jail and probation.  (ECF Nos. 7-1 at 3 (Form I-213), 7-2 at 6 (RAP Sheet.)  The 2007 conviction was dismissed under California Penal Code § 1203.4 based on petitioner's successful completion of probation.  (ECF No. 7-1 at 3.)  On June 12, 2015, petitioner was convicted of DUI and sentenced to three years' probation; on October 13, 2015, the sentence was vacated.  (Id.)

[6]  On April 27, 2026, petitioner, proceeding pro se, filed a copy of DHS' request to the  BIA to re-calendar petitioner's removal proceedings and his rap sheet with handwritten comments re status.  (ECF No. 10.)  However, the document was not signed by petitioner.  Because petitioner was subsequently appointed counsel and allowed to file a supplemental reply, the Court disregards the April 27, 2027 filing.  (Id.)

3

Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  At the time petitioner filed his petition, he was proceeding pro se and pro se pleadings are liberally construed.  Thus, the Court construes the petition challenging his re-detention as seeking release to raise a statutory claim under the Immigration and Naturalization Act ("INA" and a due process claim under the Fifth Amendment.[7]  (See ECF No. 1.)  In the response to the petition, respondents appear to have construed the petition to raise the following claims:  (1) a statutory claim under the INA; and (2) a Fifth Amendment due process claim.  (See ECF No. 7.)  Therefore, there is no prejudice to respondent in the Court's construction.  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 7 at 1-2.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 2.)

In reply, petitioner, through counsel, argues that petitioner is subject to detention under 8 U.S.C. § 1226(a), and was entitled to a pre-detention hearing, which he did not receive, and therefore should be immediately released.  (ECF No. 13 at 3.)

Importantly, respondents do not argue that petitioner is subject to detention under 8 U.S.C. § 1226(c) or § 1231.

---

[7]  The form petition also addresses prolonged detention and challenges third country removal procedures, neither of which are at issue herein.  (See ECF No. 1, passim.)

4

## A.  Statutory Claim

This Court must first decide whether petitioner, who has lived in the United States since 1992, is subject to discretionary release as first ordered by immigration officials under § 1226(a) in 2007 as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).  Respondents contend § 1225(b)(2) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 7 at 1-2.)

The Court concludes that § 1226(a) applies to petitioner.  First, the parties do not appear to dispute that petitioner was previously released by immigration authorities.  (See ECF No. 7 at 3 (referring to the "agency's previous determination to grant release" and the termination of petitioner's release); ECF No. 13 at 3 (petitioner "was previously detained and released by immigration officials").)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[8] of Sections 1225 and

---

[8]  Until DHS changed its policy in July 2025, the Government consistently applied Section

1226.  See, e.g., Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."); Lopez-Campos v. Raycraft, et al., 2026 WL 1283891, at *1 (6th Cir. May 11, 2026) [9]; Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']  construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3

---

1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

[9]  The full case citation also includes the following: Juan Manuel Lopez-Campos (25-1965); Juan Carlos Sanchez Alvarez (25-1969); Jose Daniel Contreras-Cervantes; Fredy De Los Angeles-Flores; Mariela Virginia Ocando-Leon; Luis Felipe Jarquin-Jarquin; Debbie Vasquezcruz; Jairo Manuel Godoy-Perez; Marifer Diaz-Alcantar; Miguel Angel Reyes-Sanchez (25-1978); Jesus Jose Pizarro Reyes (25-1982) v. Kevin Raycraft, Immigr. & Customs Enf't, Acting Dir. of Detroit Field Off., Enf't & Removal Operations (25-1965/1969/1978/1982); Markwayne Mullin, Sec'y of U.S. Dep't of Homeland Security; U.S. Dep't of Homeland Sec. (25-1965/1969); Todd W. Blanche, Acting U.S. Att'y General; Exec. Off. of Immigr. Rev. (25-1965), 2026 WL 1283891, at *1 (6th Cir. May 11, 2026).

n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2). This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner entered the United States in 1992, petitioner was previously released by immigration authorities, and his February 26, 2026 arrest and re-detention were not upon his arrival to the United States. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). As such, petitioner should have been provided a bond hearing before his re-detention and is entitled to relief on his statutory claim.

**B.    Due Process Claim**

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment

pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated after prior release without pre-custodial hearing or notice.  (ECF No. 13 at 3.)  Respondents argue petitioner's due process claim fails because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 7 at 2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the

8

level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release in or about August 2007 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of immigration custody for over 18 years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. Plaintiff obtained work authorization and worked. (ECF No. 13 at 1.) Petitioner has three U.S. citizen children ages 12, 14, and 24 years old, and is also married to a U.S. citizen. (ECF No. 13 at 1.) This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release was presumably premised upon a finding that, at the time of petitioner's release, he was not dangerous or a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for

any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's

10

discretion to incarcerate non-citizens is always constrained by the requirements of due process."). Petitioner lived in the U.S. since 1992, when he was brought here with his parents.  For over 18 years after petitioner was released from immigration custody in or around August 2007, petitioner was free from immigration custody before his re-detention.  During that period, petitioner had children, obtained work authorization from immigration authorities in October 2024, and worked. (ECF No. 13 at 1.)  The lengthy duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not argue that petitioner's criminal record subjects him to mandatory detention under 8 U.S.C. § 1226(c).  (ECF No. 7.)  Here, petitioner has been detained since February 26, 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger given his criminal history.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094. In addition, here, petitioner was previously released by immigration officials in 2007 and he remained on release for over 18 years.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

### C.    Petitioner's Other Claims for Relief

In light of the Court's recommendation that petitioner's be granted relief on his statutory and due process claims, his claims under the Administrative Procedure Act and the Eighth Amendment (ECF No. 1 at 15-18) need not be resolved.

## V.    CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on two separate grounds:  (1) petitioner's statutory claim, and (2) petitioner's due process claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED on petitioner's statutory and due process claims.

2.  Respondents be ordered to IMMEDIATELY release petitioner Jesus Gonzalez (A-095-739-118) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents

(e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

3.   This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4.   Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  Petitioner shall be allowed to have his counsel present at any such hearing.

5.   The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 18, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/gonz2804.157.2241.imm.bond

13